# In the United States Court of Federal Claims

No. 10-109 C
(Filed April 22, 2010)[1]

```
* * * * * * * * * * * * * *      *
SHAMROCK FOODS COMPANY,          *
                                 *
            Plaintiff,           *
                                 *
      v.                         *   Post-Award Bid Protest;
                                 *   Standing of Non-Bidder; Waiver
THE UNITED STATES,               *   of Right to Protest Solicitation
                                 *   Term.
            Defendant,           *
                                 *
U.S. FOODSERVICE, INC.,          *
                                 *
            Intervenor-defendant. *
* * * * * * * * * * * * * *      *
```

*Robert W. Hartman*, Washington, DC, for plaintiff. *Stuart M. Gerson* and *Constance Wilkinson*, Washington, DC, of counsel.

*Kenneth S. Kessler*, United States Department of Justice, with whom were *Tony West*, Assistant Attorney General, *Jeanne E. Davidson*, Director, *Kirk T. Manhardt*, Assistant Director, Washington, DC, for defendant. *Michael L. McGlinchey*, Defense Supply Center Philadelphia, Defense Logistics Agency, Philadelphia, PA, agency counsel.

*Rebecca E. Pearson*, Washington, DC, for intervenor-defendant. *James Y. Boland* and *Brendan M. Lill*, Washington, DC, of counsel.

---

[1] This opinion was issued under seal on March 10, 2010. Pursuant to ¶ 5 of the ordering language, the parties were invited to identify source selection, proprietary or confidential material subject to deletion on the basis that the material was protected/privileged. No redactions were proposed by the parties. Thus, the sealed and public versions of this opinion are identical, except for the publication date and this footnote.

_____

## OPINION AND ORDER

_____

**Bush**, *Judge*.

Shamrock Foods Company (Shamrock) filed its post-award bid protest complaint on February 18, 2010, challenging the award of a contract to U.S. Foodservice, Inc. (Foodservice), through which Foodservice will provide certain food and beverage supply and delivery services to Fort Bliss, Texas. Compl. ¶¶ 11, 34. Shamrock is the incumbent contractor for these services at Fort Bliss. The procuring agency is the Defense Supply Center Philadelphia, Defense Logistics Agency, United States Department of Defense (Supply Center). The complaint also brings various contract claims against the United States which the court will not address in this opinion.[2]

Plaintiff's bid protest is now before the court on motions to dismiss brought by defendant and intervenor-defendant Foodservice, and cross motions for judgment on the administrative record brought pursuant to Rule 52.1(c) of the Rules of the United States Court of Federal Claims (RCFC). The administrative record (AR) was filed on February 23, 2010, and briefing was filed according to an expedited schedule.[3] Oral argument was held on March 8, 2010. For the reasons set forth below, defendant's and intervenor-defendant's motions to dismiss plaintiff's bid protest are granted.

## BACKGROUND

---

[2]/ The court defers ruling on defendant's motion to dismiss plaintiff's contract claims. Although Shamrock's contract claims share certain facts with plaintiff's bid protest, these contract claims are distinct claims and do not warrant the expedited consideration afforded bid protests brought in this court.

[3]/ The parties have expressed some disagreement as to contents of the administrative record and as to whether the court should consider various exhibits attached to the parties' filings. These disputes are immaterial to the resolution of plaintiff's bid protest inasmuch as the court has not relied upon any contested exhibit in determining the outcome of this dispute.

I.  **Shamrock's Prime Vendor Contract Including Fort Bliss**

Shamrock was awarded Contract No. SPM300-07-D-3220 by the Supply Center on or about February 28, 2007.[4]  Compl. ¶ 21; AR at 269.  That contract is an indefinite quantity, fixed price contract for the supply and delivery of food and beverages to various federal military and civilian installations in New Mexico and western Texas, including Fort Bliss.  AR at 269-71, 273-78, 295.  More than half of the value of the contract is attributed to services provided to Fort Bliss.  Pl.'s Mot. at 2; AR at 10-11.  As "prime vendor," Shamrock provides a "'one-stop' shopping environment from commercial food service vendors" to the federal installations listed in its contract.  Def.'s Bid Protest Mot. at 4.

The contract includes one base year, with four possible option years.  AR at 271.  Two option years were exercised by the government.  *Id.* at 293-94, 296-98; Pl.'s Mot. at 3.  Shamrock's contract is due to expire on April 10, 2010.  AR at 298.  It is undisputed that the government has met the minimum purchase requirements of the current option year.  Pl.'s Mot. at 3.

II.  **Solicitation of a Back-Up Prime Vendor for Fort Bliss**

   A.  **Relevant Contract Clauses**

Shamrock's contract, and similar prime vendor contracts with the Supply Center, contain three clauses related to the addition of customers to a prime vendor contract, or the requirement that a prime vendor serve as back-up prime vendor to a different prime vendor contract.[5]  The relevant portion of the back-up prime vendor clause is reproduced here:  "The offeror(s) awarded the prime vendor contract for this area may become a potential backup supplier for other area should a prime vendor in an adjacent or nearby area, be unable to support one, some, or all of the

---

[4]/ The contract number has been updated to reflect the passage of time and is now SPM300-08-D-3220.  AR at 292.

[5]/ In some contracts, the three clauses supplement each other; in others, a contract modification requires that the revised "addition of customers" clause on this subject replace two related clauses.  *Compare* AR at 287, 583 *with id.* at 595, 600, 603.  Both Shamrock and Foodservice's prime vendor contracts contain all three related clauses and contain no instruction that the revised "addition of customers" clause should replace other clauses treating the same subject.

customers in that assigned area." AR at 15.  To invoke this clause, the Supply Center would negotiate "a bilateral agreement/modification to the contract" with its prime vendor in an adjacent area that would add the new customers to that vendor's contract.  *Id.*

Shamrock's contract also contained two related clauses titled "additional customers" and "addition of customers."  AR at 22-23, 288-89.  The original clause states, in relevant part, that "[t]he Government reserves the right to add [Defense Department] and non-[Defense Department] customers in the solicited area to the Prime Vendor contract based on a mutually agreed upon implementation plan."  AR at 22.  The revised "addition of customers" clause contemplates that customers in one prime vendor's service area may be added to an "adjacent or proximal" prime vendor's contract "in the event that the contract performance of the prime vendor contractor providing foodservice support to the existing customer installation(s) is determined unsatisfactory."  AR at 288.

Foodservice, the intervenor-defendant in this suit, was awarded and holds the prime vendor contract for Las Vegas, Nevada and surrounding areas, Contract No. SPM300-05-D-3123.[6]  *See* AR Tabs 9-10.  Awarded in 2005, Foodservice's prime vendor contract includes one base year, and four option years, and is otherwise similar to Shamrock's prime vendor contract.  Foodservice is currently within its fourth option year which expires on September 3, 2010.  *Id.* at 591.  Foodservice's prime vendor contract contains "back-up prime vendor," "additional customers" and "addition of customers" contract clauses that are identical to the clauses in Shamrock's prime vendor contract.  *Id.* at 312, 319, 584-85.

**B.    The Supply Center Decides to Invoke the Back-Up Prime Vendor Clause and Remove Fort Bliss from Shamrock's Prime Vendor Contract**

For reasons not relevant here, the Supply Center found Shamrock's contract performance at Fort Bliss to be unsatisfactory.  On June 9, 2009, at a meeting including representatives from Fort Bliss, the Supply Center and Shamrock, the government decided that the Supply Center "would start the process to invoke the

---

[6]/ The contract number has been updated to reflect the passage of time and is now SPM300-08-D-3123.  AR at 580, 582, 587.

4

back-up Prime Vendor provision of the contract to find Ft. Bliss another foodservice supplier." Pl.'s Mot. Ex. 6 at 3; Def.'s Mot. Att. D at 3. On July 14, 2009, counsel for Shamrock contacted the contracting officer by letter and expressed plaintiff's opposition to the removal of Fort Bliss from Shamrock's prime vendor contract. Pl.'s Mot. Ex. 8; Def.'s Contract Claims Mot. Ex. A.

### C. Solicitation and Award to Foodservice

According to the government, the Supply Center researched "neighboring" prime vendors and concluded that four vendors could potentially provide back-up prime vendor services to Fort Bliss. AR at 624. These vendors were located in Phoenix, San Antonio, Las Vegas, and Little Rock. *Id.* Of the four contractors contacted during the summer of 2009, three responded with proposals. *Id.* Shamrock's Phoenix-based operation, the prime vendor on Contract No. SPM300-10-D-3335, declined to submit a bid even though it was solicited by the Supply Center. *Id.*; Def.'s Mot. at 8. Sometime in December 2009, the Supply Center selected Foodservice to become the back-up prime vendor for Fort Bliss. AR at 628-30.

The Supply Center first modified Foodservice's prime vendor contract to add Fort Bliss to that contract, with a place of performance in Albuquerque. AR at 592-93. This modification is dated December 22, 2009. *Id.* at 592. On January 28, 2010, Foodservice's prime vendor contract was further modified by issuing an "administrative contract" for Foodservice's back-up prime vendor services at Fort Bliss, Contract No. SPM300-08-D-3354.[7] *Id.* at 594. Monday, February 22, 2010 was identified as the date when back-up prime vendor services at Fort Bliss would commence. *Id.* at 592.

## III. Procedural History

Shamrock and three other prime vendors were initially contacted on July 30, 2009 and were informed of the opportunity to bid on the work at Fort Bliss. AR at 606-08, 623. Bids were due on August 18, 2009. AR at 608. This deadline was extended to September 1, 2009, at Shamrock's request. *Id.* at 611-12. Shamrock

---

[7] Although this is purported to be a bilateral modification, the copy in the record before the court is not signed by Foodservice.

did not file an agency-level protest, a protest at the Government Accountability Office, or a bid protest in this court before bid opening on September 1, 2009. On January 27, 2010, counsel for Shamrock wrote the commander of the Supply Center and expressed Shamrock's opposition to the impending deletion of Fort Bliss from Shamrock's prime vendor contract. Pl.'s Mot. Ex. 9. On February 18, 2010, Shamrock filed its bid protest in this court. The court issued a temporary restraining order the next day, preventing the implementation of Foodservice's performance at Fort Bliss until this bid protest could be adjudicated.

## DISCUSSION

### I.  Jurisdiction

This court "shall have jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1) (2006). The jurisdictional grant is "without regard to whether suit is instituted before or after the contract is awarded." *Id.* As a threshold jurisdictional matter, however, the plaintiff in a bid protest must show that it has standing to bring the suit. *Info. Tech. & Applications Corp. v. United States*, 316 F.3d 1312, 1319 (Fed. Cir. 2003) (*ITAC*); *Myers Investigative & Sec. Servs., Inc. v. United States*, 275 F.3d 1366, 1369 (Fed. Cir. 2002) (citation omitted).

### II.  Standard of Review under RCFC 12(b)(1)

In rendering a decision on a motion to dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1), this court must presume all undisputed factual allegations to be true and must construe all reasonable inferences in favor of the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800, 814-15 (1982); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed. Cir. 1988). The relevant issue in a motion to dismiss under RCFC 12(b)(1) "'is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Patton v. United States*, 64 Fed. Cl. 768, 773 (2005) (quoting *Scheuer*, 416 U.S. at 236). The plaintiff bears the burden of establishing subject matter jurisdiction, *Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1377 (Fed.

Cir. 1998) (citing *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936)), and must do so by a preponderance of the evidence, *Reynolds*, 846 F.2d at 748 (citations omitted).  The court may look at evidence outside of the pleadings in order to determine its jurisdiction over a case.  *Martinez v. United States*, 48 Fed. Cl. 851, 857 (2001) (citing *RHI Holdings, Inc. v. United States*, 142 F.3d 1459, 1461-62 (Fed. Cir. 1998); *Rocovich v. United States*, 933 F.2d 991, 993 (Fed. Cir. 1991)), *aff'd in relevant part*, 281 F.3d 1376 (Fed. Cir. 2002).  "Indeed, the court may, and often must, find facts on its own."  *Id.*  If jurisdiction is found to be lacking, this court must dismiss the action.  RCFC 12(h)(3).

### III.   Standard of Review under RCFC 12(b)(6)

It is well-settled that a complaint should be dismissed under RCFC 12(b)(6) "when the facts asserted by the claimant do not entitle him to a legal remedy."  *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002).  When considering a motion to dismiss under this rule, "the allegations of the complaint should be construed favorably to the pleader."  *Scheuer*, 416 U.S. at 236.  "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is warranted under Rule 12(b)(6).  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

### IV.   Analysis

#### A.   Standing

In the post-award bid protest context, a potential contractor has standing if it had a substantial chance of receiving the contract award but for an alleged procurement error.  *ITAC*, 316 F.3d at 1319 (citing *Alfa Laval Separation, Inc. v. United States*, 175 F.3d 1365, 1367 (Fed. Cir. 1999)).  A protestor possessing a substantial chance of winning the contract has a "direct economic interest" in the procurement and has standing before this court.  *Rex Serv. Corp. v. United States*, 448 F.3d 1305, 1307-08 (Fed. Cir. 2006) (*Rex Service*) (citing *Myers*, 275 F.3d at 1369-70).  A plaintiff who has declined to bid in response to a solicitation generally has no standing for a post-award bid protest.[8]  *Id.*

---

[8]/  In certain circumstances, a plaintiff who has been prevented by agency action from bidding on a contract might, even as a non-bidder, have standing to bring a post-award protest in
(continued...)

In this case, the Supply Center contacted Shamrock and invited Shamrock to bid as a back-up prime vendor for the contract work at Fort Bliss.[9]  AR at 606-10. Shamrock asked for an extension of the bid submission deadline, which was duly extended to September 1, 2009.  *Id.* at 611-12.  Three bidders submitted proposals by the deadline, but Shamrock did not submit a proposal.  *Id.* at 624.  Award was made to Foodservice sometime in December 2009.  *Id.* at 629-30.  Because Shamrock did not submit a bid for the back-up prime vendor work at Fort Bliss, plaintiff has no standing for this post-award bid protest.[10]

Shamrock argues that a non-bidder should have standing for a post-award bid protest, despite these precedents, if submitting a bid in response to a solicitation would have been futile.  Pl.'s 2d Reply at 9.  Plaintiff relies principally on *CNA Corp. v. United States*, 81 Fed. Cl. 722, 727 (2008), a pre-award bid protest case, for its futility argument.  *CNA* is not binding precedent on this court and is inapposite in this case because its holding concerns pre-award bid protest

---

[8]/ (...continued)
this court.  *See Rex Service*, 448 F.3d at 1308 & n** (declining to decide whether a plaintiff who timely protested an allegedly improper solicitation to a federal agency, and whose submission of a bid was blocked by agency action, would have standing for a subsequent bid protest in this court).  Here, there was no impediment preventing Shamrock from bidding on the contract work at Fort Bliss.

[9]/ Shamrock, the plaintiff in this suit, apparently has multiple contracts with the Supply Center, for different regions of the United States.  Shamrock's Phoenix-based operation was solicited to replace Shamrock's Albuquerque-based operation for the contract work at Fort Bliss. *See* AR at 607.  The National Director of Accounts for Shamrock was contacted by the Supply Center regarding the problems Fort Bliss customers had reported with Shamrock's Albuquerque-based operation, as well as regarding the upcoming opportunity for Shamrock's Phoenix-based operation to compete for the back-up prime vendor work at Fort Bliss.  *See* AR at 606, 644, 653.

[10]/ Defendant somewhat inconsistently describes the Supply Center's selection of a back-up prime vendor for Fort Bliss as either a procurement or a contract modification. *Compare* Def.'s Mot. at 2-3, 12, 16-18, 29 (referring to the selection process as a procurement) *with* Oral Arg. Tr. at 22-27 (insisting that the selection of a back-up prime vendor for Fort Bliss was not a procurement, but simply a contract modification).  Regardless of the label used to describe this selection process, the government acquired back-up prime vendor services from Foodservice and its actions are susceptible to this court's bid protest review.  *See* 28 U.S.C. § 1491(b)(1) (providing this court with jurisdiction over "any alleged violation of statute or regulation in connection with a procurement or a proposed procurement").

standing. Standing to bring a pre-award protest is not the same as standing to bring a post-award protest.[11]  *See, e.g.*, *Rex Service*, 448 F.3d at 1308 (distinguishing between actual and prospective bidder standing, and noting that "'the opportunity to qualify as . . . a prospective bidder ends when the proposal period ends'" (quoting *MCI Telecomms. Corp. v. United States*, 878 F.2d 362, 365 (Fed. Cir. 1989))).

This court is bound by precedent which holds that a non-bidder has no standing to bring a post-award bid protest even if agency action is alleged to have prejudiced the non-bidder's ability to participate in a procurement.  *See id.* (noting that non-bidders who miss the opportunity to protest deficiencies in a procurement before the bidding period closes lack standing for a post-award bid protest (citing *Fed. Data Corp. v. United States*, 911 F.2d 699, 705 (Fed. Cir. 1990))).  If any futility exception to bid protest standing requirements exists, it is for pre-award bid protestors who allege that improper agency action prevents them from participating in a procurement.  *See id.* (suggesting that standing might be available to a pre-award bid protestor if "it file[s] a timely bid protest in the Court of Federal Claims, in which it established that it expected to bid prior to the close of the solicitation period, but was prevented from doing so on the basis of improper agency action") (citation omitted).  Here, even if plaintiff had established that it was futile for Shamrock to bid for the back-up prime vendor work at Fort Bliss, futility does not give standing to a non-bidder bringing a post-award bid protest in this court.

   B.   **Waiver**

The waiver rule established by the United States Court of Appeals for the Federal Circuit states that "a party who has the opportunity to object to the terms of a government solicitation containing a patent error and fails to do so prior to the close of the bidding process waives its ability to raise the same objection

---

[11]/ If Shamrock had filed a pre-award bid protest before September 1, 2009, the standing problem it encounters here might have been obviated.  *See Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1362 (Fed. Cir. 2009) (holding that a prospective bidder who alleges non-trivial, prejudicial legal error in a solicitation may have standing for a pre-award bid protest); *Infrastructure Def. Techs., LLC v. United States*, 81 Fed. Cl. 375, 384-85 (2008) (*Infrastructure Defense*) (noting that filing a pre-award bid protest may confer standing to challenge the legality of a solicitation (citing *Rex Service*, 448 F.3d at 1308)).

afterwards in a § 1491(b) action in the Court of Federal Claims." *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308, 1315 (Fed. Cir. 2007) (*Blue & Gold Fleet*). As this court has noted, "*Blue & Gold* [*Fleet*] has been consistently interpreted as standing for the proposition that '[t]he proper time to challenge the provisions of a prospectus is before bids are required to be submitted.'" *Allied Materials & Equip. Co. v. United States*, 81 Fed. Cl. 448, 459 (2008) (quoting *Frazier v. United States*, 79 Fed. Cl. 148, 177 (2007)) (other citations omitted). Among the many reasons for this rule cited by the Federal Circuit is the need for "'expeditious resolution'" of bid protests before this court. *Blue & Gold Fleet*, 492 F.3d at 1315 (quoting 28 U.S.C. § 1491(b)(3)). The waiver rule thus "avoids costly after the fact litigation." *Infrastructure Def. Techs., LLC v. United States*, 81 Fed. Cl. 375, 389 (2008) (citing *Blue & Gold Fleet*, 492 F.3d at 1314).

Shamrock, along with three other vendors, was invited to submit a proposal to become the back-up prime vendor for the Supply Center's customers at Fort Bliss. AR at 606-10. The deadline for receipt of bids was extended at Shamrock's request. *Id.* at 611-13. Shamrock did not file a protest of the terms of the solicitation before bids were due on September 1, 2009. Instead, Shamrock filed its bid protest complaint in this court on February 18, 2010, after award of the contract work and less than a week before a back-up prime vendor was scheduled to begin servicing customers at Fort Bliss.

The solicitation contained an explicit declaration that the Supply Center would be awarding contract work at Fort Bliss to a back-up prime vendor. *See* AR at 606-10. Any protest of that solicitation term was due before September 1, 2009. Because Shamrock waited until February 18, 2010 to file its protest, plaintiff waived its right to protest the legality of the solicitation in this court.

Plaintiff raises two arguments in a vain attempt to forestall the inevitable conclusion that *Blue & Gold Fleet* bars its bid protest in this court. First, plaintiff suggests that the waiver rule has no application to a plaintiff who abstains from participating in a procurement and who files a protest after the award of a contract. In other words, waiver, in plaintiff's view, only occurs if "the contractor submitted a bid then waited to see if it would win before filing a protest." Pl.'s 2d Reply at 11. Unfortunately for plaintiff, there is no support for this limited view of the waiver rule in *Blue & Gold Fleet* or in cases interpreting the waiver rule. The unsurprising reason that the rule announced in *Blue & Gold Fleet* has been applied primarily to protestors who have submitted bids in response to solicitations is that

10

actual bidders are "interested parties" who have standing to bring post-award bid protests.[12]  *See, e.g.*, *Rex Service*, 448 F.3d at 1308 (noting that both actual and prospective bidders may have bid protest standing, but that "'the opportunity to qualify either as an actual or a prospective bidder ends when the proposal period ends'" (quoting *MCI*, 878 F.2d at 365)).  The waiver rule in *Blue & Gold Fleet* clearly states that a challenge to the terms of a solicitation is untimely and waived if filed after the bidding period.  492 F.3d at 1315.  Shamrock waived its right to object to the Supply Center's award of the back-up prime vendor contract work at Fort Bliss.

Plaintiff also contends that Shamrock was "not aware of the full details" of the contract award to Foodservice until "well after the bidding period had closed."  Pl.'s 2d Reply at 12.  Therefore, plaintiff asserts that *Blue & Gold Fleet*'s waiver rule "does not bar Shamrock's bid protest."  *Id.*  Plaintiff's position is flawed.  Shamrock has argued, and continues to argue, that the Supply Center had no right to compete the Fort Bliss portion of Shamrock's contract, and that argument has been waived under the precedent of *Blue & Gold Fleet*.  All of plaintiff's bid protest arguments have thus far focused on the illegality of the contract mechanisms by which the contract work at Fort Bliss was awarded to Foodservice.  These mechanisms were readily discernable in the solicitation provided to Shamrock.  It is of no consequence that the minutiae of the contract award to Foodservice were not revealed in the solicitation.  The "full details" of the contract award to Foodservice do not permit Shamrock to escape the timeliness requirements set forth in *Blue & Gold Fleet*.[13]

In any case, to the extent that Shamrock's particular challenge to the selection of Foodservice as back-up prime vendor for Fort Bliss might be viewed

---

[12]/  This court has noted that in the post-award bid protest context "the case of waiver [under *Blue & Gold Fleet* precedent] is even stronger" for a non-bidder than a bidder.  *Infrastructure Defense*, 81 Fed. Cl. at 389.

[13]/  It is true that a protestor may bring separate grounds for a bid protest, and in doing so, may waive some of these grounds under *Blue & Gold Fleet* and not others.  *See Benchmade Knife Co. v. United States*, 79 Fed. Cl. 731, 737-39 (2007) (applying the *Blue & Gold Fleet* waiver rule to two protest grounds, but not to a third ground).  In this case, however, the solicitation and the prime vendor contract terms gave notice to Shamrock that the "full details" of the award to Foodservice were the foreseeable outcome of the selection process conducted by the Supply Center.

as separable from its overall challenge to the legality of the award of the contract work at Fort Bliss, the court cannot reach the merits of this challenge.[14]  Such a challenge could only be brought by an interested party, and Shamrock lacks standing as an interested party in this procurement.  *See supra*.  Furthermore, plaintiff has not shown how any errors in the award to Foodservice could have prejudiced Shamrock's chances of retaining the contract work at Fort Bliss through a new award.  As a non-bidder, Shamrock was not prejudiced by any proposal selection errors allegedly tainting the award to Foodservice.  *See Labatt Food Serv., Inc. v. United States*, 577 F.3d 1375, 1380-81 (Fed. Cir. 2009) (holding that a protestor must challenge a *prejudicial* error that hindered its own chances of obtaining a contract).

## CONCLUSION

Shamrock lacks standing to bring this post-award bid protest, and waived its rights to protest the terms of the solicitation clearly indicating that a back-up prime vendor would service customers at Fort Bliss.  Because the court is precluded from reaching the merits of Shamrock's bid protest, the court also need not consider the question of whether Shamrock has shown that it is entitled to injunctive relief from this court.  Defendant's and intervenor-defendant's motions to dismiss are granted.

Accordingly, it is hereby **ORDERED** that

(1) The Temporary Restraining Order entered in this case on February 19, 2010 and extended on March 5, 2010 is **DISSOLVED** as of the date of this order;

(2) Plaintiff's Motion for Judgment on the Administrative Record, filed February 23, 2010, is **DENIED**;

(3) Defendant's Motion to Dismiss Counts I, II, III, and IV of Plaintiff's Complaint, filed March 2, 2010, is **STAYED** until further order of the court;

---

[14]/ Plaintiff focuses on particularities such as the "originating location," proximity to Texas, and scope of Foodservice's prime vendor contract in Nevada.  Pl.'s Mot. at 20-21.

(4) Defendant's and Intervenor-Defendant's Motions to Dismiss Plaintiff's Bid Protest (Count V of the complaint), filed March 2, 2010, are **GRANTED**;

(5) On or before **April 9, 2010**, counsel for the parties shall **CONFER** and **FILE** with the Clerk's Office a **redacted copy** of this opinion, with any material deemed proprietary marked out and enclosed in brackets, so that a copy of the opinion can then be prepared and made available in the public record of this matter;

(6) On or before **April 9, 2010**, counsel for the parties shall **CONFER** and **FILE** a **Joint Status Report** proposing further proceedings to resolve plaintiff's remaining contract claims in this matter; and

(7) Each party shall bear its own costs.

/s/Lynn J. Bush
LYNN J. BUSH
Judge